# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### FLORENCE DIVISION

| | | |
|---|---|---|
| Tyree Blanks, | ) | Civil Action No. 4:07-70017-TLW |
| | ) | Criminal No. 4:03-388-TLW |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| The United States of America, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

This matter comes before the Court for consideration of the *pro se* motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 filed by the Petitioner, Tyree Blanks ("Petitioner" or "Defendant").

On March 23, 2004, Defendant was charged in the Second Superseding Indictment with four counts of criminal conduct: 1) that Defendant did conspire to distribute and to possess with intent to distribute 5 grams or more of cocaine base and a quantity of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846; 2) that Defendant did knowingly possess with intent to distribute and did distribute a quantity of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; 3) that Defendant knowingly did use and carry a firearm during and in relation to, and did possess the firearm in furtherance of, a drug trafficking crime, and in the course of committing this violation did cause the death of Joel Briggs through the use of the firearm, and that such death constituted murder under 18 U.S.C. § 1111 and in violation of 18 U.S.C. §§ 2, 924(c), and 924(j)(1); and 4) that Defendant knowingly and willfully did attempt to kill Cornell Lamonte Daniels and David Jeffrey Major, with the intent to prevent their attendance and testimony in an official proceeding in violation of 18 U.S.C. § 1512(a)(1)(A) and (3)(B). (Doc. # 56).

On May 28, 2004, the Defendant signed a plea agreement agreeing to plead guilty to Counts 1 and 3 of the Second Superseding Indictment. (Doc. # 71). On June 1, 2004 Defendant entered a plea of guilty to Counts 2 and 3 of the Second Superseding Indictment.[1] (Doc. # 73). On March 10, 2005, this Court sentenced Defendant to a term of life imprisonment. This term consisted of twenty years (20) as to Count 2 and life as to Count 3, all such terms to run concurrently. (Doc. # 83).[2] Defendant filed a Notice of Appeal on March 31, 2005. (Doc # 84). On January 26, 2006, the Fourth Circuit affirmed this Court's sentence. U.S. v. Blanks, 164 Fed.Appx. 369 (4th Cir. 2006).

Petitioner filed the present action on February 6, 2007, seeking relief on multiple grounds. (Doc. # 106). The United States of America ("Government") filed its response in opposition to Petitioner's motion for relief under 28 U.S.C. § 2255 and filed a motion for summary judgment on March 13, 2009. (Docs. # 129 and # 130). Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Petitioner was advised by Order filed April 29, 2009 that he had thirty-four days to file any material in opposition to the Government's motion for summary judgment. (Doc. # 132). Petitioner filed a reply on June 2, 2009. (Doc. # 137). This matter is now ripe for decision.

## 28 U.S.C. § 2255

United States Code, Title 28, Section 2255 provides that a prisoner in custody under sentence of a federal court may file a motion in the Court which imposed the sentence to vacate, set aside, or correct the sentence. The statute states four grounds upon which such relief may be claimed: (1) that

---

[1]While the plea agreement stated that Defendant would plead guilty to Counts 1 and 3, Defendant pled guilty before the Court to Counts 2 and 3 of the Second Superseding Indictment.

[2]Pursuant to the Federal Rules of Criminal Procedure, Rule 35(b), on January 28, 2009, Petitioner's sentence was reduced to 540 months, consisting of 240 months as to Count 2 and 540 months as to Count 3, such terms to run concurrently. (Doc. # 122).

the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law, and (4) that the sentence is otherwise subject to collateral attack. 28 U.S.C.A. § 2255. Generally, "28 U.S.C. § 2255 requires [a] petitioner to prove by a preponderance of the evidence that 'the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law.'" Leano v. United States, 334 F. Supp. 2d 885, 890 (D.S.C. 2004) (quoting 28 U.S.C. § 2255(a)). In Leano, the District Court noted that this is "the proof needed to allege a constitutional error, and that "[t]he scope of review of non-constitutional error is more limited than that of constitutional error; a non-constitutional error does not provide a basis for collateral attack unless it involves 'a fundamental defect which inherently results in a complete miscarriage of justice,' or is 'inconsistent with the rudimentary demands of fair procedure.'" 334 Leano, 334 F. Supp. 2d at 890 (quoting United States v. Mikalajunas, 186 F.3d 490, 495-96 (4th Cir. 1999)). In deciding a 28 U.S.C. § 2255 motion, the Court need not hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. The Court has thoroughly reviewed the motions, files, and records in this case, liberally construing Petitioner's *pro se* motion, and finds that no hearing is necessary.

**STANDARD OF REVIEW**

The Government has filed a response and motion for summary judgment as to all grounds raised by Petitioner. (Docs. # 129 and # 130). In examining a motion for summary judgment, the Court must determine whether there exists a genuine issue of material fact. Fed. R. Civ. P. 56. Of

course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of genuine issues of material fact. Celotex Corporation v. Catrett, 477 U.S. 317, 323; see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249. Though this initial responsibility rests with the moving party, when a motion for summary judgment is made and supported as provided in Rule 56, the non-moving party must produce "specific facts showing that there is a genuine issue for trial," rather than resting upon bald assertions contained in the pleadings. Fed R. Civ. P. 56(e); see Celotex, 477 U.S. 317. Thus, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue of material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. Celotex, 477 U.S. at 322-23 (1986).

## **DISCUSSION**

Petitioner has filed this action asserting several claims, nearly all of which are based upon an alleged ineffective assistance of counsel. His claims, set forth verbatim, are as follows:

> Ground one: Attorneys were ineffective and their actions prejudiced the petitioner (if not for errors of attorneys) petitioner would insist on trial.

Ground two: Attorneys were ineffective for failing to present facts from the evidence (which was obvious) from the record that there was no (aforethought) present to convict.

Ground three: Attorneys were highly ineffective when they allowed the petitioner to plead guilty to a crime he never committed.

Ground four: Attorneys were ineffective for removing objections to drug amount not in indictment and thus caused a Sixth Amendment Violation.

(Pet. at p. 5-6).[3] After Petitioner asserts these four grounds for relief, Petitioner notes, "Also, there is an additional argument at page 13 (thirteen) in the brief at (2)." (Pet. at p. 6). This additional allegation reads as follows, "Attorneys were ineffective for not challenging the fact that simple sales of drugs 'were never intended 'by Congress' to be used as a 'drug trafficking' crime.'" (Memo at p. 13).

In order to prevail on a claim of ineffective assistance of counsel, Petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficiencies prejudiced the Petitioner's defense to the extent that he was denied a fair trial. Strickland v. Washington, 466 U.S. 668, 687-692 (1984). The Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Further, there is "a strong presumption that counsel's

---

[3]"Pet." refers to Petitioner's "motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by a person in federal custody" found at Doc. # 106. "Memo" refers to Petitioner's "memorandum of law and authorities in support of this 28 U.S.C. § 2255 motion pursuant to the rules which govern § 2255" found at Doc. # 106-1. "Reply" refers to Petitioner's reply to the Government's response in opposition to Petitioner's motion to vacate found at Doc. # 137.

conduct falls within the wide range of reasonable professional assistance . . . ." Id. at 689.

With regards to Petitioner's first ground for relief, Petitioner asserts, "Petitioner was never informed of the fact he was pleading to a (mandatory) life sentence. This fact rendered the plea unintelligent." (Pet. at p. 5). Petitioner states that his attorneys[4] "coaxed the petitioner into believing that 'there was only a possibility he could receive life' but he should take into consideration the judge's sentencing history." (Memo at p. 3). The Petitioner then states that his attorneys advised him that if he pled guilty he "could possibly benefit 'some' but only if he did not contest the government's evidence which would be presented against him." Id. Petitioner next asserts that he was unaware that murder in the first degree carried a mandatory life sentence, and that had he known, he would not have pled guilty. Id. Instead, he would have insisted on going to trial. Id. According to Petitioner, because the Government was not seeking the death penalty, he would have been no worse off if he had gone to trial. (Reply at p. 2). He also asserts that his attorneys failed to object to this Court's instructions during the guilty plea proceedings. (Memo at p. 3). Petitioner points to page 26 of the Transcript of Guilty Plea Proceedings and asserts that the Court merely defined murder as it appears under 18 U.S.C. § 1111 but did not mention what possible sentence may accompany the conviction. Id.

In considering Petitioner's first ground for relief, the Court has reviewed the plea transcript for this case. The relevant portion as set forth herein is as follows:

THE COURT: DO YOU HAVE ANY QUESTIONS OF ME IN REGARDS TO HOW MURDER IS DEFINED UNDER FEDERAL LAW?

THE DEFENDANT: NO, SIR.

---

[4]Since the Petitioner was eligible to receive the death penalty, two attorneys were appointed in this case.

THE COURT: HAVE YOU HAD A CHANCE TO DISCUSS THAT PARTICULAR PROVISION WITH YOUR LAWYERS, MR. MONCKTON AND MR. DIGGS?

THE DEFENDANT: YES, SIR.

THE COURT: DO YOU HAVE ANY FURTHER QUESTIONS OF MR. MONCKTON OR MR. DIGGS IN REGARDS TO THE DEFINITION OF MURDER THAT I JUST READ TO YOU IN THAT CODE SECTION?

THE DEFENDANT: NO, SIR.

THE COURT: NOW, YOU'RE PLEADING GUILTY TO THE 924(J)(1) CHARGE. 924(J)(1) READS AS FOLLOWS. A PERSON WHO IN THE COURSE OF A VIOLATION OF SUBSECTION C, AND THAT IS THE USE OF A GUN, WHO IN THE COURSE OF A VIOLATION OF SUBSECTION C, CAUSES THE DEATH OF A PERSON THROUGH THE USE OF A FIREARM SHALL, AND THIS IS PARAGRAPH ONE, SUB-PARAGRAPH ONE, IF THE KILLING IS MURDER AS DEFINED IN SECTION 1111, WHICH I JUST READ TO YOU, BE PUNISHED BY DEATH OR BY IMPRISONMENT FOR ANY TERM OF YEARS OR FOR LIFE. DO YOU UNDERSTAND THAT YOU'RE PLEADING GUILTY TO THAT PARTICULAR FEDERAL LAW?

THE DEFENDANT: YES, SIR.

THE COURT: DO YOU HAVE ANY QUESTIONS OF ME OR YOUR LAWYERS IN REGARDS TO THAT SECTION OF FEDERAL LAW?

THE DEFENDANT: NO, SIR.

(Plea Tr. at 27-28, Doc. # 98).

Subsequently, after the Court explained again to Defendant the charge he was pleading guilty

to, this Court stated:

THE COURT: DO YOU HAVE ANY QUESTIONS OF ME AT THIS TIME ABOUT THIS CHARGE?

THE DEFENDANT: NO, SIR.

THE COURT: DO YOU HAVE ANY QUESTIONS THAT YOU WANT TO ASK

EITHER YOUR LAWYER OR YOUR LAWYERS ABOUT THIS CHARGE?

THE DEFENDANT: NO, SIR.

THE COURT: NOW, BY VIRTUE OF PLEADING GUILTY TO THIS CHARGE, THE MAXIMUM TERM OF IMPRISONMENT WOULD BE UP TO LIFE. DO YOU UNDERSTAND THAT I COULD SENTENCE YOU TO LIFE WITHOUT PAROLE ON THIS CHARGE, MR. BLANKS?

THE DEFENDANT: YES, SIR.

. . .

THE COURT: KNOWING THAT YOU COULD BE SENTENCED TO LIFE WITHOUT PAROLE ON THIS CHARGE, MR. BLANKS, HOW DO YOU PLEAD TO THIS CHARGE, GUILTY OR NOT GUILTY?

THE DEFENDANT: GUILTY.

. . .

THE COURT: MR. MONCKTON, DO YOU BELIEVE YOUR CLIENT UNDERSTANDS THE CHARGES THAT HE'S PLEADING GUILTY TO, AND THE ELEMENTS OF THESE CHARGES?

MR. MONCKTON: YES, SIR, YOUR HONOR. HE DOES. WE'VE BEEN OVER THEM IN GREAT DETAIL.

THE COURT: DO YOU BELIEVE HE UNDERSTANDS THE MAXIMUM PENALTIES HE FACES BY PLEADING GUILTY TO THESE CHARGES, SPECIFICALLY THAT HE'S FACING UP TO LIFE IMPRISONMENT?

MR. MONCKTON: YES, SIR, HE DOES. HE ALSO UNDERSTANDS THAT THE DEATH PENALTY IS NO LONGER AT ISSUE.

. . .

THE COURT: DO YOU UNDERSTAND THE MAXIMUM PENALTIES YOU FACE BY PLEADING GUILTY, SPECIFICALLY THAT YOU COULD BE SENTENCED UP TO LIFE IN PRISON, DO YOU UNDERSTAND THAT?

THE DEFENDANT: YES, SIR.

THE COURT: KNOWING THAT, DO YOU STILL WISH TO PLEAD GUILTY TO THESE CHARGES?

THE DEFENDANT: YES, SIR.

(Plea Tr. at 29-32, Doc. # 98).

A careful review of the plea transcript reveals that Petitioner received notice of the possibility that he could receive a life sentence. This Court informed Petitioner numerous times that he could be sentenced to life for the offenses he committed. The record indicates at least six times where it was stated that Petitioner could receive a life sentence. In addition, this Court cannot determine that the representation received by Petitioner fell below the standard established in <u>Strickland</u>. The Plea Transcript notes that Petitioner's attorney stated that he had informed his client that Petitioner could face a life sentence. (Plea Tr. at 31, Doc. # 98). Therefore, Petitioner has failed to satisfy his burden of proof as set forth under <u>Strickland</u>. There is no evidence that Petitioner has suffered prejudice due to a deficiency on the part of Petitioner's attorneys.[5] Therefore, this Court finds that even if

---

[5] The record also indicates that Petitioner was informed that his guideline sentence would not be determined until after the presentence report had been completed. The Plea Transcript reads:

> THE COURT: THERE ARE SENTENCING GUIDELINES THAT APPLY IN CRIMINAL CASES IN FEDERAL COURT. DO YOU UNDERSTAND THAT?
>
> THE DEFENDANT: YES, SIR.
>
> THE COURT: HAVE YOU AND YOUR ATTORNEY TALKED ABOUT HOW THE SENTENCING GUIDELINES MIGHT APPLY TO YOUR CASE?
>
> THE DEFENDANT: YES, SIR.
>
> THE COURT: DO YOU UNDERSTAND THAT THIS COURT WILL NOT BE ABLE TO DETERMINE THE GUIDELINE SENTENCE FOR YOUR CASE UNTIL AFTER THE PRESENTENCE REPORT HAS BEEN COMPLETED?
>
> THE DEFENDANT: YES, SIR.

Petitioner's attorneys had not apprised him of the possibility of a life sentence, the numerous instances where this Court did state that there was the possibility of a life sentence is sufficient to show that no prejudice was suffered by Petitioner.

The Court also notes that contrary to Petitioner's assertion, he did not plead guilty to a mandatory life charge. His attorneys negotiated with the Government to try to place Petitioner in a situation where he faced a sentence of a term of years to life as opposed to a mandatory life sentence. This is, in fact, where Petitioner ended on the guideline range. This Court, however, ultimately concluded that, given the nature of the crime, the facts surrounding the murder, and the fact that Petitioner considered killing the witnesses that would testify against him, Petitioner should be sentenced to a term of life. (Sentencing Tr. at 66-70, Doc. # 95). Petitioner's attorneys had no control over the Court's determination of the length of a sentence that rests within the Guidelines.

In his second ground for relief, Petitioner claims ineffective assistance of counsel because his attorneys did not challenge Count 2 for failure to satisfy the element of malice aforethought for murder as defined at 18 U.S.C. § 1111. (Pet. at p. 5, Memo at p. 4-5). Petitioner points to the statements of Mr. Daniels, Mr. Major, and Mr. Scott, all of which indicate that Petitioner, during a crack cocaine sale, pulled out a .38 revolver and stuck it in the window of the victim's vehicle in order to rob him. (Memo at p. 5-10). All the statements then explain that the victim started to roll up the window and that Petitioner fired two shots into the vehicle. (Memo at p. 5-10). Petitioner

---

THE COURT: DO YOU FURTHER UNDERSTAND THAT THE SENTENCE IMPOSED IN YOUR CASE MAY BE DIFFERENT FROM ANY ESTIMATE YOUR ATTORNEY HAS GIVEN TO YOU?

THE DEFENDANT: YES, SIR.

(Plea Tr. at 16-17, Doc # 98)

contends that he fired the gun when the window was being rolled up on his hand and that it was not his desire to shoot. (Memo at p. 5-10).

He further argues that because the others who were with Petitioner did not know that Petitioner was going to rob or shoot the victim, that he lacked the statutory element of malice aforethought. (Memo at p. 5-10). Petitioner states that in Daniels' testimony, "there was no evidence that he knew anyone was gonna die during a robbery."[6] (Memo at p. 6).

Petitioner also notes, "when you look at the context of the statements you will see that the gunshot was caused by the victim himself." (Memo at p. 7). He explains that he lacked the "necessary aforethought to carry out a full fledged murder." (Memo. at p. 7).

In support of his argument, Petitioner cites U.S. v. Williams, 342 F.3d 352 (4th Cir. 2003). In Williams, several individuals agreed to rob drug dealers in South Carolina. Id. at 352. After learning the whereabouts of Mr. Cooper, who had just received a kilogram of cocaine, they decided to rob and kill him. Id. The men shot Cooper, put him in a car, threatened him in order to receive more money and drugs, and finally drove him down a back road and killed him. Id. at 353. Williams, one of the men involved in these events, was convicted under 18 U.S.C. § 924(c) and (j)(1) for using a firearm during a crime of violence that resulted in murder. Id. On appeal, Williams challenged his murder conviction for lack of malice aforethought. Id. at 355-56. The Fourth Circuit held that there was more than sufficient evidence to conclude that Williams acted with malice aforethought. Id. at

---

[6]Petitioner also references the testimony of Mr. Major to corroborate the testimony of Mr. Daniels. Petitioner states that Mr. Major, "testified that when they approached the vehicle at that time, Major thought they were just going to do a drug deal." (Memo at p. 7). Petitioner is careful to note that while Mr. Major intended to sell drugs, "Blanks never had any drugs to sell" and that he only "played as if he was going to sell drugs and testimony shows Blanks stated he was going to rob the victim." (Memo at p. 7).

356. Williams was present when one of the men stated that they would have to kill Cooper, Williams was given a gun and instructed to shoot Cooper if he "acted up," Williams shot Cooper in the leg and tried to shoot him again, and Williams handed the pistol to another who shot Cooper another time. Id. Finally, as they were leaving the scene, Williams alerted the others that Cooper was still moving, which resulted in one of the other men getting out the van and firing one more fatal shot into the victim. Id.

This Court concludes that the representation provided by Petitioner's attorneys satisfied the standard of performance set forth under Strickland. In the Affidavit of William Isaac Diggs, Petitioner's attorney states that Petitioner denied that he was the shooter up until his guilty plea. (Doc. # 130-2). Mr. Diggs states that Petitioner never told him that the movement of the window caused the accidental discharge of his weapon. (Doc. # 130-2). In addition, Petitioner admitted guilt after this Court explained the elements of the crime for which he was being charged during his Guilty Plea. (Plea Tr. p. 26, Doc # 98).

The record in this case reveals that Petitioner faced overwhelming evidence of guilt. The Government stated that it had several witnesses ready to testify that Petitioner fired two shots into the victim's car while Petitioner was robbing the victim. Moreover, the factual presentation during the Guilty Plea Proceedings indicates that Petitioner continued to fire several more rounds at the victim's vehicle as he drove away. Id. at 33. The record also indicates that a Mr. Wall, who was in the vehicle with the victim, and two co-defendants, Mr. Major and Mr. Daniels, gave statements that were consistent with these facts. After these statements were read into the record before Petitioner, Petitioner stated that he agreed with the facts as presented, that he was in fact guilty of these charges, that his motive was to rob the victim, and that he fired into the car and killed the victim. Id. at 36-

37.[7]

Petitioner appears to be mistaken as to what constitutes malice aforethought. The Fourth Circuit has stated, "Malice aforethought, as provided in 18 U.S.C. § 1111(a), is the distinguishing characteristic which, when present, makes a homicide murder rather than manslaughter." U.S. v. Fleming, 739 F.2d 945, 947 (4th Cir. 1984). Malice aforethought has to be "inferred by the jury from the whole facts and circumstances surrounding the killing." Id. citing Brown v. U.S., 159 U.S. 100, 103 (1894). The Fourth Circuit in Fleming further explained the requirements for malice aforethought as follows:

> Proof of the existence of malice does not require a showing that the accused harbored hatred or ill will against the victim or others. See United States v. Celestine, 510 F.2d 457, 459 (9 Cir.1975). Neither does it require proof of an intent to kill or injure. See, e.g., United States v. Shaw, 701 F.2d 367, 392 n.20 (5 Cir.1983); United States v. Black Elk, 579 F.2d 49, 51 (8 Cir.1978); LaFave & Scott, Criminal Law 541 (1972). Malice may be established by evidence of conduct which is "reckless and wanton and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that defendant was aware of a serious risk of death or serious bodily harm." Black Elk, supra, 579 F.2d at 51, quoting, in the context of a criminal action under § 1111(a), United States v. Cox, 509 F.2d 390, 392 (D.C.Cir.1974).

Id. at 947-48

There is no requirement that another had to be aware of Petitioner's intentions in order for Petitioner to have harbored the requisite malice aforethought to be convicted of murder. Furthermore, the evidence of record that Petitioner placed a gun into the window of the victim's car with the intention of robbing the victim would have been sufficient to warrant an inference from a jury that Petitioner was aware of a serious risk of death or

---

[7]The Government asserts that even without malice aforethought, the conduct still would constitute first degree murder because it was committed during the course of a robbery. (Govt's Resp. at p. 5-6); 18 U.S.C. § 111; US v. Pearson, 203 F.3d 1243, 1271 (10th Cir. 2000). The Court finds this argument persuasive.

serious bodily harm to the victim from his actions.

Under Strickland, looking at the "facts of the particular case, viewed as of the time of counsel's conduct," this Court cannot say that the performance by Petitioner's attorneys was objectively unreasonable. To the contrary, Petitioner's attorneys appear to have chosen the only viable alternative for Petitioner under the circumstances. The Williams case cited by Petitioner is indeed a clear example where a defendant exhibited the requisite malice aforethought to be convicted of first degree murder. However, the Fourth Circuit never stated that Williams established the minimum bar to prove malice aforethought. In fact, the Fourth Circuit stated that the evidence presented in Williams was *more than sufficient* to conclude that Williams acted with malice aforethought. Williams, 342 F.3d at 356. Therefore, this Court holds that the representation provided by Petitioner's attorneys was not "objectively unreasonable," as the standard set forth under Strickland requires.

In his third ground for relief, Petitioner alleges that his attorneys were ineffective because they permitted him to plead guilty to a crime he did not commit. (Pet. at p. 5). He states that his attorneys led him to believe that he was guilty of the drug charges just because he was present at the scene. (Memo at p. 11). In Petitioner's Reply, he asserts that his attorneys were ineffective for coercing Petitioner to plead guilty to this offense because another individual admitted to the crime. (Reply at p. 1). Finally, Petitioner asserts that his attorneys' failure to raise this claim on appeal shows prejudice. (Memo at p. 11).

Petitioner's claims are without merit. "To establish actual innocence, [a petitioner] must demonstrate that, 'in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" US. v. Harris, 183 F.3d 313, 318 (4th Cir. 1999) (citing Schlup v. Delo,

513 U.S. 298, 327-28 (1995)). Attorneys for Petitioner did not act unreasonably in permitting or advising their client to plead guilty, which is a decision for Petitioner to make after consulting with his counsel. The evidence present in this case weighs heavily toward a finding that Petitioner acted in concert with two other individuals with respect to the sale of crack cocaine. The record also shows that when Petitioner was arrested, he admitted to being present at the scene in order to sell drugs. (Plea Tr. p. 35, Doc. # 98). Additionally, Petitioner entered a voluntary and intelligible plea of guilty before this Court. This Court fully explained every element of the charges brought against Petitioner. Id. at 23. After this Court explained the charges, the elements of the charges, and the potential sentence for these charges, Petitioner admitted that he was guilty and that he understood the charges to which he was pleading guilty.[8] Therefore, this Court concludes that the representation provided

---

[8]The Plea Transcript reads:

THE COURT: MR. BLANKS, ARE YOU ENTERING A PLEA TODAY DOING SO OF YOUR OWN FREE WILL?

THE DEFENDANT: YES, SIR.

THE COURT: AT THIS TIME, I WANT TO REVIEW EACH OF THESE CHARGES WITH YOU, MR. BLANKS. COUNT 2 CHARGES ON OR ABOUT MARCH 28, 2001 IN THE DISTRICT OF SOUTH CAROLINA AND ELSEWHERE, THE DEFENDANT TYREE MAURICE BLANKS, DID KNOWINGLY, INTENTIONALLY AND UNLAWFULLY POSSESS WITH INTENT TO DISTRIBUTE AND DID DISTRIBUTE A QUANTITY OF COCAINE BASE, COMMONLY KNOWN AS CRACK COCAINE, A SCHEDULE TWO CONTROLLED SUBSTANCE. THIS IS IN VIOLATION OF TITLE 21 UNITED STATES CODE SECTION 841 (A) (1) AND TITLE 18 UNITED STATES CODE SECTION 2. DO YOU UNDERSTAND THIS CHARGE, MR. BLANKS?

THE DEFENDANT: YES, SIR.

THE COURT: DO YOU UNDERSTAND THAT YOU'RE PLEADING GUILTY TO POSSESSION WITH INTENT TO DISTRIBUTE AND DISTRIBUTION OF A QUANTITY OF CRACK COCAINE IN REGARD TO THAT CHARGE?

to petitioner was not objectively unreasonable, nor did Petitioner suffer any prejudice.

Because this Court does not accept Petitioner's contention that he pled guilty to a crime he did not commit, it necessarily follows that Petitioner's allegation that his lawyers provided ineffective assistance by not raising the issue on appeal must fail. It is widely held that an attorney cannot be charged with ineffective assistance of counsel for failing to raise a meritless claim. See Dennis v. Poppel, 222 F.3d 1245, 1261 (3d Cir. 2000); United States v. Kirsch, 54 F.3d 1062, 1071

---

THE DEFENDANT: YES, SIR.

THE COURT: NOW, LET ME EXPLAIN TO YOU THE ELEMENTS OF THIS CHARGE. THERE ARE ELEMENTS, FOUR ELEMENTS AND THEY ARE AS FOLLOWS. I'LL LET YOU TALK TO YOUR LAWYER IF YOU NEED TO TALK TO YOUR LAWYER. ARE WE READY TO PROCEED?

THE DEFENDANT: YES, SIR.

THE COURT: MR. BLANKS, THE ELEMENTS OF THIS CHARGE, THIS DRUG CHARGE, ARE AS FOLLOWS. THAT YOU KNOWINGLY, ONE, THAT YOU KNOWINGLY AND INTENTIONALLY POSSESSED THE CONTROLLED SUBSTANCE DESCRIBED IN THE INDICTMENT. TWO, AT THE TIME OF THE POSSESSION, YOU KNEW THAT THE SUBSTANCE POSSESSED WITH INTENT TO DISTRIBUTE OR DISTRIBUTED WAS A CONTROLLED SUBSTANCE. THREE, THAT YOU POSSESSED THE CONTROLLED SUBSTANCE WITH THE INTENT TO DISTRIBUTE THAT CONTROLLED SUBSTANCE, AND FOUR, THAT THE QUANTITY OF CONTROLLED SUBSTANCE POSSESSED BY YOU WAS A QUANTITY OF COCAINE BASE OR CRACK COCAINE. DO YOU UNDERSTAND THE ELEMENTS OF THIS DRUG CHARGE?

THE DEFENDANT: YES, SIR.

THE COURT: DO YOU HAVE ANY QUESTIONS OF ME IN REGARDS TO THIS CHARGE, MR. BLANKS?

THE DEFENDANT: NO, SIR.

(Plea Tr. p. 22-24, Doc. # 98)

(2d Cir. 1995); Bolendar v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994); United States v. Wilkes, 20 F.3d 651, 653 (5th Cir. 1994).

It also appears that in his memorandum, Petitioner asserts his attorneys were ineffective because they failed to challenge "the crack cocaine and the enhancement and also failed to advise the Petitioner of Amendment 487 which specifically defines cocaine base for sentencing purposes." (Memo at p. 12). Petitioner claims that he was unaware of the laws regulating crack cocaine or that all cocaine base is not crack. Id. He argues that there was no proof showing the particular drug that Petitioner was charged with was crack as opposed to some other form of cocaine base. Id. Finally, he states that his attorneys lacked knowledge of the law with regard to the laws governing crack cocaine offenses. Id.

This claim fails for several reasons. First, even if Petitioner had only been charged with possession of cocaine, Petitioner cannot prove that he suffered any prejudice. His drug offense ran concurrently with the charge brought under 18 U.S.C. § 924(c), and (j)(1). As the sentence for Count 3 is significantly longer than that of Count 2, any change in the length of sentence under Count 1 would have no effect on the overall length of his sentence. More importantly, Petitioner has submitted no evidence that there was a valid ground under which to have challenged the crack charge and has submitted no evidence other than his own statements that his lawyers failed to advise him of the definition of cocaine base for sentencing purposes. Therefore, Petitioner has failed to satisfy either prong of the test established under Strickland.

Petitioner further asserts that this Court never had jurisdiction to sentence Petitioner for distribution of crack cocaine because mere cocaine base does not trigger the statute for crack. (Memo at p. 12). Contrary to Petitioner's assertion, cocaine base is commonly known as crack cocaine.

Nothing in this Court's record indicates that it was without jurisdiction. Therefore, this claim is dismissed as meritless.

In his fourth ground for relief, Petitioner asserts that his attorneys were ineffective "for removing objections to drug amount not in indictment and thus caused a sixth amendment violation." (Pet. at p. 6). Petitioner alleges that "there was no amount in the indictment to match the amount found by the judge." Id. In his Memo, Petitioner states, "Petitioner Blanks constitutional rights were violated when he was charged for an amount of drugs not in his indictment or agreed to by him via the written plea, and his attorneys were highly ineffective for failing to object and prserve the issue for appeal." (Memo p. 13). The plea agreement entered into by the Petitioner did not set forth any drug amounts. In addition, the plea agreement notes that "the matter of sentencing is within the sole discretion of the court." (Plea Ag. at ¶ 11, Doc # 71). Furthermore, Count 2 of Petitioner's indictment does not include any language concerning drug amounts. It merely states, "Tyree Maurice Blanks knowingly, intentionally, and unlawfully did possess with intent to distribute and did distribute a quantity of cocaine base, commonly known as crack cocaine, a schedule II controlled substance." (Doc. # 56). No specific drug weight was mentioned in the indictment. Thus, the Petitioner is entitled to no relief as to this claim.

In his last ground for relief referenced in the Petition, Petitioner asserts that his attorneys were ineffective for not challenging the fact that "simple sales of drugs 'were never intended 'by Congress' to be used as a 'drug trafficking' crime.'" (Memo at p. 13). Petitioner has presented no evidence to support this claim. In fact, "a drug trafficking crime" is "any felony punishable under the Controlled Substance Act, (21 U.S.C. 801 et seq.) . . . ." 18 U.S.C. § 924(c)(2). A violation of 21 U.S.C. § 841 (a)(1) is a predicate offense for purposes of a violation under 18 U.S.C. § 924(c).

Therefore, Petitioner has suffered no prejudice, and Petitioner's attorneys committed no error.

Petitioner also appears to assert three additional claims found within filings other than his original petition. First, Petitioner brings to the Court's attention language in the Transcript of Sentencing Proceedings where one of Petitioner's attorneys stated that he believed that he might be in a 2255 situation. (Pet. Aff. at p. 4, Doc. # 137-1).[9] The language to which Petitioner is referring involves a discussion of whether or not Petitioner was eligible for acceptance of responsibility. The Sentencing Transcript reads:

> MR. MONCKTON: You know, I feel like I should tell the Court up front that I believe I'm in a 2255 situation, because I advised Mr. Blanks that he would receive acceptance of responsibility. That was based on my discussions with him and with Ms. Parham and Mr. Bethea. And, also, we, as a group, met with Mr. Blanks prior to him pleading guilty and they stated that they believed he, also, would receive acceptance of responsibility because he was admitting to everything.
>
> This was a death penalty case, and there have been ongoing negotiations with everybody to reach a resolution that was fair to everyone involved. And I think depriving Mr. Blanks of acceptance of responsibility, Your Honor, puts us in a situation where I should have just advised him to go to trial. Because, without the acceptance of responsibility, he's looking at a sentence that he would have received if he went to trial. There is no benefit of him pleading guilty.
>
> And, here, I'm concerned about a 2255 situation, and I want to make the Court aware of that. And I believe everybody was intending this matter, looking at the seriousness of the charge and where Mr. Blanks was going to be falling into the guidelines, it was essential for him to plead guilty, that he be given acceptance of responsibility.

(Sentencing Tr. at 39-40, Doc # 95). Petitioner's attorneys advised their client that he would receive acceptance of responsibility, and it appears that the Government informed Petitioner he would receive acceptance of responsibility. Mr. Monckton explains that without acceptance, he

---

[9]This Court is referring to the document titled, "Affidavit" submitted by Petitioner as an attachment to his reply to the Government's response in opposition to Petitioner's motion to vacate.

would have advised Petitioner to go to trial because the sentence he would have faced at trial would have been no worse than the sentence he would receive from a guilty plea.

Petitioner's argument fails to acknowledge the fact that this Court did award the three-level reduction for acceptance of responsibility. The record states:

> THE COURT:  I don't know if this case is extraordinary necessarily; but it is, I suppose, unique because this is a case involving a very serious crime and a substantially high guideline range with or without acceptance of responsibility. I think that it's my responsibility to apply the guidelines as written and to reach and appropriate guideline range as set forth in Hughes and other cases. But I do have some discretion as to acceptance of responsibility, and I'm going to exercise my discretion in this case.
>
> I am persuaded primarily by the government's position that this defendant should receive acceptance of responsibility. Certainly, the arguments by Mr. Monckton and Mr. Diggs, they have been persuasive as well.
>
> . . .
>
> So, he will receive the three levels off for acceptance of responsibility. I will exercise my discretion.

(Sentencing Tr. at 50-51, Doc # 95). The attorney's statement concerning a possible deficiency in his own performance did not prejudice his client because Petitioner received a three-level reduction at sentencing for acceptance. Petitioner cannot argue that he suffered prejudice for failure to receive something promised by his attorney when he did in fact receive what the attorney promised. Therefore, any error that Petitioner's attorney might have committed by guaranteeing his client something he could not guarantee was rendered harmless. Petitioner's offense level dropped from a 45 to a 42 and his criminal history category remained at 4. This Court explained that the guideline range was 360 to life. (Sentencing Tr. at 52, Doc # 95).

Next, Petitioner argues that his attorneys should not have allowed the Government to change

the plea from a guilty plea to Counts 1 and 3 to a guilty plea to Counts 2 and 3. (Reply, p. 2-3). Petitioner argues that without Count 2 there is no "drug trafficking" to support the drug trafficking crime. Id. Petitioner states that his attorneys incorrectly informed him that the change would not make a difference. Id. He argues that without the change, there would have been no basis for jurisdiction over the homicide. This Court finds this claim meritless. Either Count 1 or Count 2 could have served as qualifying drug trafficking offense for jurisdictional purposes under 18 U.S.C. § 924(c). Therefore, Petitioner has suffered no prejudice, and the claim is dismissed.

Finally, Petitioner argues that he "never truly understood the nature of the Constitutional rights he was waiving" and that this "positively rendered his plea unintelligent / involuntary." (Memo at p. 4) A reading of the Plea Transcript reveals that Petitioner was apprised of his rights, and this Court explained in detail what rights he would be waiving. The relevant portion of the transcript reads:

> THE COURT: MR. BLANKS, I'M GOING TO BE ASKING YOU SOME QUESTIONS IN TAKING YOUR PLEA TO ESTABLISH FOR THE RECORD THAT YOU'RE COMPETENT TO ENTER A PLEA, THAT THE PLEA IS FREE AND VOLUNTARY, THAT YOU UNDERSTAND THE CHARGES AND PENALTIES THAT YOU'RE PLEADING TO, YOU UNDERSTAND THE CHARGE AND UNDERSTAND THE PENALTIES YOU FACE BY PLEADING GUILTY TO THESE CHARGES, AND AS WELL, I MAY HAVE SAID, TO ENSURE THERE'S A FACTUAL BASIS FOR YOUR PLEA.
>
> HAVE WE SWORN THE DEFENDANT? I'D ASK THE DEFENDANT BE SWORN AT THIS TIME. (THE DEFENDANT WAS DULY SWORN)
>
> THE COURT: MR. BLANKS, YOU'RE NOW UNDER OATH. IF YOU FAIL TO ANSWER ANY OF MY QUESTIONS TRUTHFULLY. YOU COULD FACE A CHARGE OF PERJURY. HOW OLD ARE YOU, MR. BLANKS?
>
> THE DEFENDANT: 22 YEARS OLD, SIR.
>
> THE COURT: HOW FAR DID YOU GO IN SCHOOL?

THE DEFENDANT: TENTH GRADE.

THE COURT: ARE YOU ABLE TO READ AND WRITE?

THE DEFENDANT: YES, SIR.

THE COURT: HAVE YOU EVER BEEN TREATED FOR ANY MENTAL ILLNESS OR ADDICTION TO NARCOTICS DRUGS OR ALCOHOL?

THE DEFENDANT: NO, SIR.

THE COURT: ARE YOU PRESENTLY UNDER THE INFLUENCE OF ANY DRUGS, MEDICATIONS OR ALCOHOLIC BEVERAGES?

THE DEFENDANT: NO, SIR.

THE COURT: IS THERE ANYTHING, ANY DRUGS, ANY MEDICATIONS OR ANY MATTERS THAT PREVENT YOU FROM THINKING CLEARLY THIS MORNING?

THE DEFENDANT: NO, SIR.

THE COURT: DO YOU UNDERSTAND THE PURPOSE OF THESE PROCEEDINGS TODAY, THAT YOU'RE HERE TO PLEAD GUILTY IN YOUR CASE?

THE DEFENDANT: YES, SIR.

THE COURT: MR. MONCKTON, YOU'VE BEEN DEALING WITH YOUR CLIENT FOR SOME TIME AS HIS COUNSEL. IN YOUR OPINION, DOES HE POSSESS THE REQUISITE MENTAL JUDGMENT AND CAPACITY TO ENTER A PLEA AT THIS TIME?

MR. MONCKTON: YES, SIR, YOUR HONOR, HE DOES.

THE COURT: ARE THERE ANY COMPETENCY QUESTIONS THAT NEED TO BE ADDRESSED BY THE COURT?

MR. MONCKTON: NO, SIR, YOUR HONOR.

THE COURT: HAS THE DEFENDANT BEEN EVALUATED FOR COMPETENCY?

MR. MONCKTON: NO, SIR, YOUR HONOR.

THE COURT: I BELIEVE HE WAS NOT EVALUATED BECAUSE THERE WAS NO INDICATION HE NEEDED TO BE EVALUATED, IS THAT CORRECT?

MR. MONCKTON: YES, SIR.

THE COURT: BASED ON MY REVIEW OF THE RECORD, MY COLLOQUY WITH THE DEFENDANT AND DEFENSE COUNSEL, I FIND THAT THE DEFENDANT IS COMPETENT TO ENTER A PLEA.

MR. BLANKS, HAVE YOU RECEIVED A COPY OF THE INDICTMENT THAT OUTLINES THE CHARGES AGAINST YOU?

THE DEFENDANT: YES, SIR.

THE COURT: HAVE YOU HAD A CHANCE TO FULLY DISCUSS THESE CHARGES WITH YOUR ATTORNEYS, MR. MONCKTON AND MR. DIGGS?

THE DEFENDANT: YES, SIR.

THE COURT: HAVE YOU HAD SUFFICIENT TIME TO CONSULT WITH YOUR ATTORNEYS IN YOUR CASE?

THE DEFENDANT: YES, SIR.

THE COURT: I'M SORRY?

THE DEFENDANT: YES, SIR.

. . .

THE COURT: DID YOU HAVE AN OPPORTUNITY TO READ, REVIEW AND DISCUSS THE PLEA AGREEMENT WITH YOUR ATTORNEY BEFORE YOU SIGNED IT?

THE DEFENDANT: YES, SIR.

THE COURT: DO YOU UNDERSTAND THE TERMS OF YOUR PLEA AGREEMENT?

THE DEFENDANT: YES, SIR.

THE COURT: DOES THE PLEA AGREEMENT REPRESENT IN ITS ENTIRETY THE UNDERSTANDING YOU HAVE WITH THE GOVERNMENT?

THE DEFENDANT: YES, SIR.

THE COURT: HAS ANYONE MADE ANY OTHER OR DIFFERENT PROMISES TO YOU OTHER THAN WHAT IS SET FORTH IN THAT PLEA AGREEMENT?

THE DEFENDANT: NO, SIR.

THE COURT: HAS ANYONE ATTEMPTED IN ANY WAY TO FORCE YOU TO PLEAD GUILTY IN YOUR CASE?

THE DEFENDANT: NO, SIR.

. . .

THE COURT: YOU'LL HAVE TO SPEAK UP SO I CAN HEAR YOU. IT'S MY DUTY TO ADVISE YOU BY PLEADING GUILTY, MR. BLANKS, YOU ARE ADMITTING THE CHARGES AND ALL ASSERTIONS OF FACT IN RELATION TO THESE CHARGES. YOU'RE WAIVING ALL DEFENSES TO THESE CHARGES AND DEFECTS IN THE PROCEEDINGS. YOU'RE RENDERING IRRELEVANT ALL CLAIMS OF VIOLATIONS OF YOUR CONSTITUTIONAL RIGHTS WHICH MAY HAVE OCCURRED PRIOR TO THE ENTRY OF YOUR GUILTY PLEA.

LET ME MAKE IT CLEAR TO YOU. BY PLEADING GUILTY, YOU'RE CONSENTING TO A BINDING JUDGMENT OF CONVICTION. IN OTHER WORDS, YOU'RE CONSENTING TO A CONVICTION AND THE IMPOSITION OF AN APPROPRIATE SENTENCE IN YOUR CASE. DO YOU UNDERSTAND WHAT I'VE JUST EXPLAINED TO YOU, MR. BLANKS?

THE DEFENDANT: YES, SIR.

THE COURT: LET ME ADVISE YOU, MR. BLANKS, YOU HAVE A RIGHT TO PLEAD NOT GUILTY TO ANY CHARGE THAT IS BROUGHT AGAINST YOU. DO YOU UNDERSTAND THAT?

THE DEFENDANT: YES, SIR

THE COURT: DO YOU UNDERSTAND THAT IF YOU PLEAD NOT GUILTY, WE WILL HAVE A TRIAL IN YOUR CASE?

THE DEFENDANT: YES, SIR.

THE COURT: DO YOU WANT A TRIAL IN YOUR CASE, MR. BLANKS OR DO YOU WANT TO PLEAD GUILTY?

THE DEFENDANT: PLEAD GUILTY, SIR.

. . .

THE COURT: FURTHER, DO YOU UNDERSTAND THAT YOU WILL HAVE WAIVED OR GIVEN UP YOUR RIGHT TO A TRIAL AS WELL AS THOSE RIGHTS ASSOCIATED WITH A TRIAL THAT I JUST DESCRIBED?

THE DEFENDANT: YES, SIR.

THE COURT: SO AGAIN, DO YOU WANT TO PLEAD GUILTY, MR. BLANKS, OR DO YOU WANT TO PROCEED TO TRIAL?

THE DEFENDANT: PLEAD GUILTY, YOUR HONOR.

(Plea Tr. at 7-10, 13-14, 20-22, Doc. # 98).

The transcript indicates that petitioner answered all questions concerning his competency, the voluntariness of his plea, and whether he understood the charges brought against him in the affirmative. Therefore, this claim is without merit.

In addition, the Court has reviewed all remaining allegations contained in the 28 U.S.C. § 2255 petition and supporting memorandum and determined that Petitioner is not entitled to relief on any of the claims raised therein.

## CONCLUSION

For the foregoing reasons, Petitioner's motion for relief pursuant to 28 U.S.C. § 2255, (Doc. #106), is **DENIED** and the Government's motion for summary judgment is **GRANTED**.  (Doc. #129). Additionally, Petitioner's Motion for Judgment on the Pleadings is also **DENIED**. (Doc. # 111).

The Court has reviewed this petition in accordance with Rule 11 of the Rules Governing Section 2255 Proceedings and 28 U.S.C. § 2253.  Applying the provisions set forth at 28 U.S.C. § 2253 (c), this Court concludes that it is appropriate to issue a certificate of appealability as to all issues raised herein.

**IT IS SO ORDERED**.

s/Terry L. Wooten
TERRY L. WOOTEN
United States District Judge

February 18, 2010
Florence, South Carolina