IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| United States of America,<br><br>v.<br><br>Tyree Maurice Blanks | Crim. No. 4:03-cr-00388-TLW-1<br><br>**ORDER** |

This matter comes before the Court for consideration of Defendant Tyree Maurice Blank's *pro se* Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 170. For the reasons below, Blank's motion is **DENIED**.

## PROCEDURAL BACKGROUND

On March 28, 2001, Blanks shot and killed Joel P. Briggs during a drug deal robbery in Williamsburg County, South Carolina. *See* Presentence Investigation Report ("PSR") ¶ 29. Following his arrest, cooperating witnesses revealed that Blanks engaged in the illegal distribution of crack cocaine in Williamsburg County from early 2000 until Brigg's murder. *Id.* Next, while incarcerated after his arrest, Blanks solicited three people, including an undercover agent, to kill two witnesses to Brigg's murder. *Id.*

On March 23, 2004, Blanks was charged in the Second Superseding Indictment with four counts of criminal conduct: (1) that he did conspire to distribute and to possess with intent to distribute 5 grams or more of cocaine base and a quantity of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846; (2) that he did knowingly possess with intent to distribute and did distribute a quantity of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; 3) that he

Page 1 of 20

knowingly did use and carry a firearm during and in relation to, and did possess the firearm in furtherance of, a drug trafficking crime, and in the course of committing this violation did cause the death of Joel Briggs through the use of the firearm, and that such death constituted murder under 18 U.S.C. § 1111 and in violation of 18 U.S.C. §§ 2, 924(c), and 924(j)(1); and (4) that he knowingly and willfully did attempt to kill Cornell Lamonte Daniels and David Jeffrey Major, with the intent to prevent their attendance and testimony in an official proceeding in violation of 18 U.S.C. § 1512(a)(1)(A) and (3)(B). ECF No. 56.

Facing a potential death sentence under the charging statute, Blanks entered into a plea agreement with the Government on May 28, 2004, pleading guilty to Counts 1 and 3 of the Second Superseding Indictment. ECF No. 71. On June 1, 2004, Blanks entered a plea of guilty to Counts 2 and 3 of the Second Superseding Indictment.[1] On March 10, 2005, he was sentenced to a term of Life Imprisonment. ECF No. 83. This term consisted of twenty years as to Count 2 and Life as to Count 3, all terms to run concurrently. *Id.*

Blanks appealed his sentence, which was affirmed by the United States Court of Appeals for the Fourth Circuit in *United States v. Blanks*, 164 F. App'x 369 (4th Cir. 2006). ECF No. 103. He then petitioned for habeas corpus pursuant to 28 U.S.C. § 2255. ECF No. 106. That petition was denied by this Court, which was then affirmed by the Fourth Circuit. ECF Nos. 141 & 149. On September 16, 2008, the Government sought a reduction in Blanks' sentence pursuant to Rule 35(b) of the

---

[1] While the plea agreement stated that Defendant would plead guilty to Counts 1 and 3, Blanks pled guilty to Counts 2 and 3 of the Second Superseding Indictment at his change of plea hearing.

Federal Rules of Criminal Procedure. ECF No. 116. On January 28, 2009, Blanks' sentence was reduced to 540 months, consisting of 240 months as to Count 2 and 540 months as to Count 3, such terms to run concurrently. ECF No. 122.

On July 15, 2022, Blanks filed this motion for compassionate relief pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 170. The Government opposes Blanks' motion. ECF No. 176. Accordingly, this matter is ripe for review, adjudication, and disposition.

## APPLICABLE LAW

Without certain exceptions, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of those exceptions is the compassionate release statute. That statute provides:

> [T]he court, . . . upon motion of the defendant . . . , may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) . . . , if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). "A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted." *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020).

The Sentencing Commission has issued a policy statement addressing compassionate release motions—§ 1B1.13. But before the passage of the First Step Act, compassionate release motions could be filed only by the BOP, so § 1B1.13 by its terms only applies to BOP motions. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020) (explaining the First Step Act's changes to the

compassionate release statute). There is no corresponding policy statement addressing compassionate release motions filed by inmates. Thus, in *McCoy*, the Fourth Circuit held that, when considering an inmate's compassionate release motion, § 1B1.13 is not an "applicable policy statement[]." *Id.* at 284. But while § 1B1.13 may not directly apply to an inmate's motion, "it remains helpful guidance." *Id.* at 282 n. 7.

While § 1B1.13 may provide guidance, it is not an "applicable policy statement[]," so "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d. Cir. 2020)) (emphasis in original); *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). Ultimately, the determination of whether a case presents extraordinary and compelling reasons warranting a sentence reduction is a question reserved to the sound discretion of the district court.

## DISCUSSION

In order to provide context to both Blanks' motion and the Court's decision, the Court will first review the offense conduct establishing Blanks' present incarceration before reviewing the parties' arguments and conducting its own analysis.

### I.  THE OFFENSE CONDUCT

On March 28, 2001, Joel P. Briggs was shot and murdered by Blanks in Williamsburg County, South Carolina, in an apparent drug deal gone bad. PSR ¶

10. Earlier in the evening, Briggs and his friend, Rodney R. Waugh, departed Lake City, South Carolina, in Waugh's Cadillac to purchase crack cocaine in Kingstree, South Carolina. *Id.* ¶ 11. When they arrived in Kingstree, they approached two unknown males in their Cadillac, and Briggs asked where he could purchase crack. *Id.* The two individuals, later identified as Cornell Lamonte Daniels and David Jeffrey Majors, asked Briggs how much he wanted, and Briggs responded that he wanted a $100.00 slab. *Id.*

Neither Daniels nor Majors had drugs in their possession, so they instructed Briggs and Waugh to drive around the block. *Id.* ¶ 12. After their third trip around the block, they were waived over by Majors and Daniels who had been joined by a third individual, later identified as Blanks. *Id.* After Waugh pulled the Cadillac over, Daniels motioned for Waugh to roll down his window. *Id.* ¶¶ 13 & 15. Waugh refused, because he was scared. *Id.* Briggs then told Daniels to come to the other side of the vehicle where he asked him to sell him a $20.00 crack rock, so he could test it, which Daniels did. *Id.* Sensing something was wrong, Waugh told Briggs he wanted to leave. *Id.* ¶ 13.

One of the individuals then told Waugh to put the Cadillac in park and turn off the engine, which he refused. *Id.* ¶ 14. At the same time, Briggs then pulled out more money to purchase additional crack. *Id.* ¶ 16. Blanks then pulled out a .38 caliber Smith and Wesson revolver to rob Brigg. *Id.* Briggs started to roll up the window, and Waugh heard Briggs say something in an excited manner. *Id.* ¶¶ 14 & 16. Blanks fired twice inside the vehicle. *Id.* ¶ 16. Waugh threw the vehicle into

gear and sped back towards Lake City. *Id.* ¶ 14. Blanks fired one more shote as the vehicle was pulling away. *Id.* ¶ 16. Waugh managed to find an ambulance at a gas station near Lake City. *Id.* ¶ 14. He turned Briggs over to the ambulance, but it was too late, and Briggs died the next day, on March 29, 2001. *Id.* He left behind two young children. *Id.* ¶ 31.

Back in Kingstree, Blanks, Daniels, and Majors picked up $150.00, which Briggs dropped as the Cadillac sped away. *Id.* ¶ 16. Adding this to the $20.00 Briggs had already paid them, the three went and purchased marijuana, which they smoked together. *Id.* ¶ 17. They were arrested nearly a year later in April 2002. *Id.* at 1. Both Majors and Daniels identified Blanks as the trigger man. *Id.* ¶¶ 17–19. Neither knew beforehand that Blanks would shoot Briggs, though Daniels stated that Briggs talked about robbing Briggs and Waugh before the robbery, since they were from out of town. *Id.* ¶ 17. Later, while incarcerated in the Williamsburg County Detention Center, Blanks admitted to two separate inmates that he murdered Briggs. *Id.* ¶¶ 21 & 25. He told them that he reached into the car to grab Briggs money, inserted his pistol through the Cadillac's window, and fired twice. *Id.* Further, as outlined in Paragraph 33 of the Presentence Report, Blanks admitted to agents in a post-arrest interview that he decided to "rob the two guys in the car" and that he shot the victim three times." *Id.* ¶ 33. Ultimately, he admitted that he "shot the victim *for no real reason.*" *Id.* (emphasis added).

Based on this conduct, Blanks was charged with conspiracy to possess with intent to distribute crack cocaine, possession with intent to distribute crack cocaine,

and felon in possession.

After he was arrested for Briggs' murder, Blanks attempted to retaliate against his compatriots, Daniels and Major. When he thought one of his fellow inmates at the Williamsburg County Detention Center would be released, Blanks solicited the inmate to kill Daniels. *Id.* ¶ 22. Specifically, he told him he wanted Daniels to "go missing" and that he would pay him $2,500.00 to kill Daniels after the inmate was released. *Id.* He also promised to look after the inmate and "feed him some dope," since he knew the inmate was a drug dealer. *Id.* ¶ 24. Blanks spoke with the inmate about his plan to kill Daniels for over a week. *Id.* According to Blanks' plan, Daniels and the inmate would go to the beach together and the inmate would return by himself. *Id.* ¶ 23. Blanks also told the inmate that the police would be unable to prosecute the inmate without a weapon or a body. *Id.* Therefore, he should dispose of both the murder weapon and Daniels' body once the job was completed. *Id.*

Blanks later solicited his cellmate to murder both Daniels and Major. *Id.* ¶ 25. He asked his cellmate if he knew someone who could kill Daniels and Major on Blanks' behalf. *Id.* His cellmate told Blanks that he knew someone, but that person would have to speak to Blanks individually. *Id.* Blanks then provided the names and addresses of Daniels and Major to his cellmate, so that he could forward them to his contact on the outside. *Id.*

Hearing of Blanks' conversations with his fellow inmates, the Federal Bureau of Investigation then sent in a special agent working in an undercover capacity to

speak with Blanks. *Id.* ¶ 27. During the undercover agent's visit, Blanks referred to Daniels and Major testifying against him and stated that he wanted one of the witnesses taken care of in a manner which would leave him unable to testify at Blanks' court date. *Id.* Blanks told the agent he could not access his money in jail but that a payment could be arranged once the witness was taken care of and Blanks was out of jail. *Id.*

The same undercover agent later visited Blanks again. *Id.* ¶ 28. This time he told Blanks that he needed the money upfront to take out Daniels. *Id.* Blanks told the agent to get in contact with his girlfriend, who would provide the agent with the name and location of Daniels. *Id.*

Based on this conduct, Blanks was charged with witness tampering.

## II.   THE PARTIES' ARGUMENTS

Before addressing the merits of Blanks' motion for compassionate release, the Court will first review the arguments raised by both Blanks and the Government. *See* ECF Nos. 135 & 140.

### A.   *Blanks' Arguments in Support of His Motion*

Blanks asserts forth seven grounds which he posits are "extraordinary and compelling" reasons justifying either his release or a reduction in his sentence. They are (1) his youth at the time of the offense of conviction, (2) his actual innocence of Count 2 of the Indictment, (3) the time he has served, (4) his maturity and rehabilitation, (5) his proposed release plan, (6) his belief the § 3553(a) sentencing

factors favor his release, and (7) his claim that he is eligible for a sentence reduction based on Section 404 of the First Step Act. ECF No. 170 at 5.

### B. *The Government's Opposition*

The Government opposes Blanks motion on the independent grounds that he has not identified "extraordinary and compelling reasons" warranting a reduction and because the § 3553(a) factors weigh against his release, since he still poses a significant danger to the public. ECF No. 175 at 7–12. As to Blanks' asserted grounds for compassionate release, the Government maintains that he cannot meet his burden because (1) the several of grounds based on his alleged rehabilitation are not independent "extraordinary and compelling reasons" but, rather, properly considered when weighing the § 3553(a) factors, (2) he is not actually innocent of Count 2, which the Court previously found in its order denying Blanks' § 2255 petition, and (3) the application of Section 404 of the First Step Act would have no impact on Blanks' current sentence. *Id.* at 7–8.

### III. THE COURT'S REVIEW

The Court will first analyze whether Blanks has presented "extraordinary and compelling reasons" warranting a reduction in his sentence before weighing whether the § 3553(a) factors favor either his release or a reduction in his sentence.

### A. *The "Extraordinary and Compelling Reasons" Standard.*

In reviewing Blanks' seven grounds for relief, the Court finds that only two are proper for consideration as "extraordinary and compelling reasons." The remaining five are details which are more properly considered when weighing the §

3553(a) factors. Accordingly, the Court will only address Blanks' claim of actual innocence as to Count 2 of the Indictment and his claim that he is eligible for a sentence reduction based on Section 404 of the First Step Act. The remaining grounds will be addressed when the Court reviews the § 3553(a) factors.

> i.   *Blanks is not actually innocent of Count 2 of the Indictment.*

Blanks asserts that he is actually innocent of Count 2 of the Indictment, which he pled guilty to. Count 2 charged Blanks with possession with intent to distribute and distribution of crack cocaine. ECF No. 56 at 2. The Court has addressed this argument in the context of denying Blanks' § 2255 habeas petition. ECF No. 141. The Court has again considered Blanks' arguments and reviewed the record and again finds that he is not actually innocent of Count 2 of the Indictment.

Actual innocence means *factual* innocence, not legal insufficiency. *See United States v. Mikalajunas*, 186 F.3d 490, 494 (4th Cir. 1999). "Typically, to establish actual innocence a petitioner must demonstrate actual factual innocence of the offense of conviction, *i.e.,* that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *Id.* (citing *Sawyer v. Whitley,* 505 U.S. 333, 339–41(1992)). There is no factual dispute that the evidence presented in this case supported a finding that Blanks acted in concert with Major and Daniels with respect to the sale of crack cocaine as charged in Count 2. At Blanks' guilty plea hearing, the Government put Vince Flamini, an agent of the Federal Bureau of Investigation, to provide the facts surrounding the offense conduct. Agent Flamini testified that

Blanks took part in the distribution of cocaine and that Blanks admitted his involvement to investigating officers:

> THE COURT: Thank you. Mr. Briggs or Mr. Blanks, was he involved in, you said, I believe you made this clear, but he was involved in the original drug activity, is that correct?
>
> AGENT FLAMINI: Yes, sir. He was one of the three individuals.
>
> THE COURT: That agreed to sell drugs or intended to sell drugs or did sell drugs to Mr. Briggs. Is that correct?
>
> AGENT FLAMINI: Yes, sir.
>
> . . .
>
> THE COURT: Did this defendant make any statement at the time of his arrest?
>
> AGENT FLAMINI: When he was arrested by the Williamsburg County Sheriff's Office, *he admitted to being present at the scene in order to sell drugs* to these two individuals, although he implicated Mr. Daniels as being the shooter.

ECF No. 98 at 33:25–35: 23 (emphasis added).

Blanks' guilt of the conduct charged in Count 2 of the Indictment was confirmed in his colloquy with the Court during his plea hearing. There, Blanks entered a knowing, voluntary, and intelligible plea of guilty, and the Court fully explained every element of the charges brought against him:

> THE COURT: Mr. Blanks, are you entering a plea today doing so of your own free will?
>
> DEFENDANT: Yes, sir.

| | |
|---|---|
| THE COURT: | At this time, I want to review each of these charges with you, Mr. Blanks. |
| | Count 2 charges on or about March 28, 2001 in the district of South Carolina and elsewhere, the defendant Tyree Maurice Blanks, did knowingly, intentionally and unlawfully possess with intent to distribute and did distribute a quantity of cocaine base, commonly known as crack cocaine, a schedule two controlled substance. This is in violation of title 21 United States Code section 841 (a) (1) and title 18 United States Code section 2. |
| | Do you understand this charge, Mr. Blanks? |
| DEFENDANT: | Yes, sir. |
| THE COURT: | Do you understand that you're pleading guilty to possession with intent to distribute and distribution of a quantity of crack cocaine in regard to that charge? |
| DEFENDANT: | Yes, sir. |
| THE COURT: | Now, let me explain to you the elements of this charge. There are elements, four elements and they are as follows. I'll let you talk to your lawyer if you need to talk to your lawyer. |
| | Are we ready to proceed? |
| DEFENDANT: | Yes, sir. |
| THE COURT: | Mr. Blanks, the elements of this charge, this drug charge, are as follows. That you knowingly, one, that you knowingly and intentionally possessed the controlled substance described in the indictment. Two, at the time of the possession, you knew that the substance possessed with intent to distribute or distributed was a controlled substance. Three, that you possessed the controlled substance with the intent to distribute that controlled substance, and four, that the quantity of controlled substance |

|  |  |
|---|---|
|  | possessed by you was a quantity of cocaine base or crack cocaine. |
|  | Do you understand the elements of this drug charge? |
| DEFENDANT: | Yes, sir. |
| THE COURT: | Do you have any questions of me in regards to this charge, Mr. Blanks? |
| DEFENDANT: | No, sir. |
| THE COURT: | By virtue of pleading guilty, you're facing a maximum period of imprisonment of up to 20 years. Do you understand that? |
| DEFENDANT: | Yes, sir. |
| THE COURT: | You're facing a maximum period of supervised release of up to three years. Do you understand that? |
| DEFENDANT: | Yes, sir. |
| THE COURT: | And you're facing a maximum fine of one million dollars as a result of pleading guilty. Do you understand that? |
| DEFENDANT: | Yes, sir. |

*Id.* at 22:23–24:24. Based on these affirmations—presented under oath—the Court finds that Blanks cannot establish actual innocence as to Count 2 of the Indictment. "A defendant's solemn declarations in open court affirming a plea agreement carry a strong presumption of verity because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (cleaned up). "Indeed, because they do carry such a presumption, they present 'a formidable barrier in any

subsequent collateral proceedings.'" *United States v. White,* 366 F.3d 291, 295 (4th Cir. 2004) (quoting *Blackledge v. Allison,* 431 U.S. 63, 76 (1977)). Again, actual innocence requires factual innocence; here, there are no facts supporting that Blanks is factually innocent of Count 2 of the Indictment. On the other hand, the facts—and Blanks' own testimony—establish his guilt. Accordingly, as this is a factually based analysis, the Court finds that Blanks' claim of actual innocence is not a basis for establishing "extraordinary and compelling reasons" warranting either his release or a reduction in his sentence.

### ii. *The First Step Act does not provide a basis for establishing "extraordinary and compelling reasons."*

Blanks next asserts that he is eligible for a reduction under § 404 of the First Step Act because "he was convicted under a 'covered offense' (count 2 of the indictment." ECF No. 170–3 at 11. The Court is unpersuaded by this argument and need not address whether Blanks' conviction under Count 2 is a "covered offense" because, even if it were, it would have no impact on Blanks' current 540-month sentence.

Blanks was originally sentenced to Life Imprisonment.[2] On September 16, 2008, the Government moved for a reduction in Blanks' sentence pursuant to Rule

---

[2] His original Guidelines calculations for his two convictions are as follows. For Count 2 (possession with intent to distribute and distribution of cocaine base), Blanks had an initial base offense level of 24. PSR ¶ 36. He then received a 9-level enhancement pursuant to U.S.S.G. § 2D1.1(d)(1), bringing his score to 43. *Id.* ¶ 37. Next, he received an additional 2-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1. *Id.* ¶¶ 40 & 41. This brought his adjusted offense level for Count 2 to 45. *Id.* ¶ 41. For Count 3 (violation of § 924(c)), Blanks received a base offense level of 43, which was driven by his murder cross-reference pursuant to U.S.S.G. § 2A1.1. *Id.* ¶ 43. Blanks then received a 2-level enhancement for obstruction of justice bringing his total offense level to 45. *Id.* ¶ 47. Pursuant to Guidelines § 3D1.3(a), in the cases of counts grouped together, the offense level applicable to a group is the offense level for the most serious of the counts comprising the group, *i.e.,*

35(b) of the Federal Rules of Criminal Procedure. ECF No. 116. The Court held a hearing on this motion on January 28, 2006 and entered an amended judgment resentencing Blanks to 540 months. ECF No. 122. This sentence comprised of 240 months as to Count 2 and 540 months as to Count 3, all terms to run concurrently. *Id.*

Based on this amended judgment, even if Blanks were correct that his conviction under Count 2 (possession with intent to distribute and distribution of crack cocaine) was a "covered offense," his sentence would remain unchanged because it is driven by his sentence for Count 3 (use of a firearm in relation and in furtherance of a drug trafficking crime causing death and constituting murder), not Count 2. PSR ¶¶ 35–53, 74 & 75. Accordingly, even if the First Step Act reduced his sentence for Count 2, Blanks' sentence would remain unchanged because the First Step Act would not affect the 540-month sentence imposed for Count 3. Accordingly, the Court finds that the changing legal analysis for Blanks' conviction of Count 2 under First Step Act is not a basis for establishing "extraordinary and compelling reasons" in this case.

### B. *The Court's review of the § 3553(a) factors*

Even if Blank's had established "extraordinary and compelling reasons," the Court concludes that it would still be appropriate to deny his motion based on an analysis and balancing of the § 3553(a) factors. The Court has balanced those

---

the highest offense level in the group. *Id.* ¶ 48. In this case, Blanks' total offense level for both counts was the same, resulting in a total offense level of 45. *Id.* ¶ 52.

factors given the compassionate release issues not in play at the original sentencing. *Kibble* at 335 (Gregory, C.J., concurring). The Court has also considered Blanks' other arguments for compassionate release: (1) his youth at the time of the offense of conviction, (2) the time he has served, (3) his maturity and rehabilitation, (4) his proposed release plan, and (5) his belief the § 3553(a) sentencing factors favor his release,

As part of the § 3553(a) factors, it is appropriate to review the facts surrounding Blanks' instant offenses. The Court has already reviewed that conduct in detail above. In summary, Blanks participated in the illegal distribution of crack cocaine in Williamsburg County, South Carolina, during which he committed a violent crime where he shot and murdered Joel P. Briggs during a drug buy in March 2001. After he was arrested for this violent conduct, Blanks' criminal conduct continued. He solicited two inmates and one undercover agent to murder a cooperating witness. After a review of the facts of the instant offenses, the Court concludes that "the nature and circumstances of the offense" also weigh against either his release or a reduction in his sentence.

The Court next looks to "the history and characteristics of the defendant," which reveals Blanks' significant—and violent—criminal history. Blanks' criminal history began at the age of 13 when he was convicted of simple assault and being incorrigible and ungovernable. *Id.* ¶ 54. During this incident, he struck his father with a broom handle and tried to hit him with a ladder. *Id.* At 14, Blanks was convicted of breaking and entering a motor vehicle, grand larceny, and malicious

injury to personal property. *Id.* ¶ 55. At 15, he was convicted of breaking and entering into a motor vehicle, grand larceny, and being incorrigible and ungovernable. *Id.* ¶ 56. He was placed on probation, though he violated his probation by refusing to attend school regularly, refusing to abide by a set curfew, and being found in possession of a deadly weapon at school. *Id.*

As an adult, Blanks was convicted at the age of 19 of assault and battery. *Id.* ¶ 57. Blanks was originally indicted for assault on an officer before pleading to a lesser included offense of assault and battery. *Id.* In this incident, Blanks ran from state troopers during a traffic stop in Williamsburg County, South Carolina. *Id.* After he was apprehended, he was arrested, and placed in a patrol car. *Id.* During this interaction, he spit in the face of one of the troopers, getting saliva in the trooper's mouth and eyes, requiring him to obtain medical attention. *Id.*

The Court has considered Blanks' youth at the time of the offenses of conviction. Despite being relatively young, Blanks had amassed a substantial, violent criminal history. In light of his significant criminal history the Court concludes that "the history and characteristics of the defendant" weigh substantially against either Blanks' release or a reduction in his sentence.

The Court also concludes that §§ 3553(a)(2)(A)-(C) weigh against release for similar reasons. Blanks' conduct following his arrest for Briggs' murder demonstrates his disregard for the law. Despite being incarcerated on murder charges, Blanks sought to obstruct justice by soliciting three separate individuals to murder two cooperating witnesses. The Court finds that the sentence imposed

was—and is—necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence. Given his propensity to both murder and solicit murder, the Court finds that, if released, Blanks would pose a significant risk to the safety of others based on the violent conduct outlined above.

The Court next turns to §§ 3553(a)(3)-(6)—the kinds of sentences available, the Guidelines sentencing range, any applicable policy statements, and the need to avoid sentencing disparity. Blanks was sentenced to a then mandatory Guidelines range of Life Imprisonment. In 2008, he received a reduction in his sentence from Life to 540 months. Given Blanks' violent conduct, the then-mandatory sentence of Life, and Blanks' propensity to commit acts of violence, the Court finds that this sentence is both reasonable and necessary. It has thus given careful consideration to §§ 3553(a)(3)-(6) and concludes that these factors do not favor a reduction in Blanks' sentence or his release.

Finally, despite Blanks' claim of maturity and rehabilitation, the Court notes that he has accumulated an excessive inmate disciplinary history which includes the following infractions: assaulting with serious injury, fighting with another person, two instances of assaulting without serious injury, two instances of threatening bodily harm, two instances of possessing a dangerous weapon, possessing a hazardous tool, two instances of engaging in sexual acts, indecent exposure, destroying property $100.00 or less, stealing, possessing an unauthorized item, possessing intoxicants, two instances of refusing to obey an order, three

instances of being insolent to a staff member, phone abuse-disrupt monitoring, failing to follow safety regulations, interfering with taking count, two instances of being absent from assignment, and finally, being in an unauthorized area. This conduct shows a continued disrespect for the law and weights against both his release and reduction in his sentence.

Based on its review of the record before it, Blanks' criminal history, and other necessary information, the Court finds that—even if Blanks had established "extraordinary and compelling reasons"—the § 3553(a) factors weigh against both his release and a reduction in his sentence. In summary, Blanks committed a robbery during a drug deal. During the robbery, he shot and killed the individual who was robbed, Joel Briggs. Blanks' guidelines provided Life in light of the homicide he committed during the robbery.

Finally, the Court concludes that, if released, Blanks would pose a significant risk to the safety of the public based on his extremely violent conduct as outlined here.

## CONCLUSION

In summary, Blanks has not established "extraordinary and compelling reasons" warranting a reduction in his sentence. Even if he had done so, his motion would still be denied based on the Court's analysis and balancing of the § 3553(a) factors. In conclusion, the Court finds, based on the record outlined in detail in this

order, that a reduction in Blanks' sentence is not appropriate. Accordingly, his motion, ECF No. 170, is **DENIED**.[3]

    **IT IS SO ORDERED.**

                                   *s/Terry L. Wooten*
                                   Senior United States District Judge

June 27, 2023
Columbia, South Carolina

---

[3] To the extent he seeks an order directing the BOP to grant him an early release to home confinement pursuant to the CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020), the Court does not have discretion to issue such an order. *See, e.g.*, *United States v. Hendrix*, No. 1:10-cr-00067-MR-WCM-2, 2020 WL 2319698, at *1 (W.D.N.C. May 11, 2020) ("The discretion to release a prisoner to home confinement lies solely with the Attorney General. The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this." (citations omitted)).